IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JAMES HOWARD HARRIS,

      Plaintiff,

v.                                                                     Civil No. 1:05cv17
                                                                         (Judge Stamp)

UNITED STATES OF AMERICA,

      Defendant.

## OPINION/REPORT AND RECOMMENDATION

On January 26, 2005, the *pro se* plaintiff initiated this case by filing a civil rights complaint seeking monetary and injunctive relief against Harley Lappin, K. J. Wendt, Fredrick Grawger and D. Heady. Upon preliminary review, the undersigned interpreted the complaint as one raising claims under the Federal Tort Claims Act ("FTCA") and Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Further, the undersigned recommended that plaintiff's FTCA claim be served upon the individual federal defendants, but that plaintiff's Bivens claims be dismissed for the failure to exhaustion administrative remedies.

On June 6, 2005, the District Judge affirmed and adopted the report and recommendation, thereby dismissing plaintiffs' Bivens claims and directing that plaintiff's FTCA claim be served upon the individual federal defendants. Service was effected on June 6, 2005. On September 2, 2005, the United States, and the individual federal defendants, filed a Motion to Substitute United States of America as Defendant. That request was granted on October 27, 2005.[1]

On November 11, 2005, the United States filed a Motion to Dismiss or, in the

---

[1] If the United States certifies that the federal defendant was acting in his official capacity at the time of the alleged events, then the United States should be substituted as the proper defendant. See 28 U.S.C. § 2679(d)(1); see also Maron v. United States, 126 F.3d 317, 321 (4th Cir. 1997).

Alternative, Motion for Summary Judgment. On November 18, 2005, plaintiff filed a Motion for Nondismissal or in the Alternative Motion for Summary Judgment. Because the plaintiff is proceeding *pro se*, the Court issued a Roseboro Notice advising him of his right to file a response to the defendant's dispositive motion.[2] Plaintiff filed a reply to the Roseboro Notice on June 5, 2006. Thus, this case, before the undersigned for a report and recommendation pursuant to LR PL P 83.01, et seq., is ripe for review.

## I. The Complaint

In the complaint, plaintiff asserts that in February of 2004, he fell from his bed, the top bunk, and landed on his cell floor. During his fall, plaintiff asserts that he hit his head between a metal locker and his bed post and cut his lip and chin on a protruding corner of the locker. Plaintiff further claims that the fall knocked him unconscious and left him with permanent scarring, pain in his jaw and lower neck, headaches, lower back pain, and leg pain. Plaintiff claims that the lockers were negligently placed and that the Bureau of Prisons ("BOP") has failed to correct this safety hazard in violation of their professional responsibilities.

Plaintiff filed a claim for Injury, Damage, or Death with the BOP soon after his fall. Plaintiffs' claim was denied on July 27, 2004. This case was timely filed on January 26, 2005. See 28 U.S.C. § 2401(b).

## II. The Defendant's Motion

In response to the complaint, the United States has filed a Motion to Dismiss or, in the Alternative, for Summary Judgment and a Memorandum in Support. In the motion, the

---

[2] See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975), when the defendant files a dispositive motion, the Court has a mandatory duty to advise a *pro se* litigant of his right to file responsive material and that the failure to properly respond could result in the dismissal of the action against him.

defendant asserts that on February 23, 2004, at 4:15 a.m., the plaintiff reported to staff that he had fallen from his bed and hit the floor. Plaintiff was examined by a physician assistant at the Gilmer Federal Correctional Institution ("FCI-Gilmer"). During his examination, it was discovered that plaintiff suffered from three lacerations, a 3 cm laceration to his lower lip, a 1.5 cm laceration to his chin, and a 1 cm laceration to his right knee. Plaintiff also asserted that he suffered jaw pain and tenderness, but denied that he had lost consciousness.

After his preliminary examination, plaintiff was transported to the local hospital for sutures and x-rays of his jaw. At the hospital, plaintiff received three sutures to his lip and six sutures to his chin. Plaintiff's x-ray revealed that his jaw was not fractured.

The defendant frames plaintiffs' claim as: "the placement of the locker in the cell created a dangerous condition that directly contributed to his injury." Motion (dckt. 14) at 2.

Furthermore, in response to plaintiffs' claim, the defendant asserts that the plaintiff has failed to state a claim upon which relief can be granted because he has failed to provide any evidence that mounting the locker next to the bunk bed is "actionable negligence, willful or wanton misconduct, or a nuisance." Motion at 4. Moreover, the defendant argues that the location of the locker in relation to the bunk bed was open and obvious and that the BOP, like other West Virginia landowners, has no duty to warn persons of dangerous conditions which are open and obvious.

Third, the defendant argues that plaintiff's negligence, not the BOP's was the proximate cause of his injury. In support of this contention, the defendant asserts that plaintiff's injury was cause by his falling out of bed and the failure to use due care while sleeping in the top bunk. The defendant asserts that but for plaintiff falling out of bed, he would not have been injured.

Finally, the defendant argues that plaintiff assumed the risk of injury by sleeping with his

3

head at the end of the bed closest to the locker. In support of this contention, the defendant argues that there is no requirement that plaintiff sleep facing one end of the bed or the other. Since the locker was not a masked or hidden danger, plaintiff assumed the risk of being injured by sleeping with his head at the end of the bed where the locker is located.

### III. Plaintiff's Motion for Nondismissal and for Summary Judgment

In his motion for nondismissal and for summary judgment, plaintiff asserts that there are no genuine issues and that he is entitled to judgment as a matter of law. In his memorandum in support of his motion, plaintiff asserts that he has provided evidence that mounting the lockers next to the steel rail of the bunk is actionable negligence and that the failure of the BOP to move the lockers, and protruding sharp edge, is willful and wanton misconduct. Moreover, plaintiff asserts that he has two witnesses that will testify to the dangerousness of the lockers.

In addition, the plaintiff asserts that he arrived at FCI-Gilmer only four days before the incident. Therefore, he had no prior knowledge of the dangerous condition. Moreover, he did not voluntarily expose himself to any danger. Rather, upon his arrival, plaintiff told staff that he had been issued low bunk passes at his last two places of incarceration and requested one at FCI-Gilmer. However, the staff at FCI-Gilmer refused to provide plaintiff with a low bunk assignment. Plaintiff explained his various medical problems and the need for a low bunk pass,[3] but was told that if he did not accept his upper bunk assignment he would be placed in segregation and an incident report would be written for which he could receive disciplinary sanctions. Based on those facts, plaintiff felt he had no choice but to accept the upper bunk assignment. Therefore, plaintiff argues that it was staff's failure to give appropriate

---

[3] Plaintiff asserts that he suffers from hypertension, loss of equilibrium, and has a habit of rolling in his sleep.

consideration to his medical records that put him in the position that caused him to get injured. Plaintiff asserts that there was no contributory negligence on his part or an intervening cause of injury because he used due care by informing staff of his medical problems and requesting a low bunk pass.

Plaintiff further explains that as a result of his fall from the top bunk, his head and neck lodged between the bed rail and the locker. As he continued to fall, plaintiff struck his face on the base of the locker where the sharp edge impaled his lip and lower jaw, penetrating his mouth. Plaintiff also asks the Court to note that in the pictures provided by the defendant, there are no guard rails to protect prisoners on the top bunk from potential falls and possible injury.

### IV. Plaintiff's Reply to the Court's Roseboro Notice

In his reply to the Court's Roseboro Notice, plaintiff reiterates much of his original argument and the additional argument made in his motion for summary judgment. The only new information alleged by plaintiff is that upon his arrival at FCI-Gilmer, his medical records clearly showed that he was a chronic care patient and that he was listed as bottom bunk only. In addition, plaintiff now asserts that he was "forced" to accept the upper bunk assignment. Further, plaintiff argues that the BOP should have installed safety rails on the top bunks and that the failure to do so does not fall under the "discretionary function." Finally, in contradiction to his motion for summary judgment, plaintiff asserts that "[u]nder Fed.R.Civ.Proc. 56(e) there are specific facts showing a genuine issue for trial which has been provided to this Honorable Court by the Plaintiff." Reply at 4.

### V. Standard of Review

### A. Motion to Dismiss

In ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all

5

well-pleaded material factual allegations. Advanced Health-Care Services, Inc., v. Radford Community Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Moreover, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by affidavits, exhibits and other documents to be considered by the Court, the motion will be construed as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

**B. Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. Rule 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material

facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## VI. Analysis

The FTCA waives the federal governments' traditional immunity from suit for claims based on the negligence of its employees. 28 U.S.C. § 1346(b)(1). "The statute permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). Because all of the alleged negligent acts occurred in West Virginia, the substantive law of West Virginia governs this case.

In West Virginia,

> every action for damages resulting from injuries to the plaintiff, alleged to have been inflicted by the negligence of the defendant, it is incumbent upon the plaintiff to establish . . . three propositions: (1) A duty which the defendant owes to him; (2) A negligent breach of that duty; (3) Injuries suffered thereby, resulting proximately from the breach of that duty.

Webb v. Brown & Williamson Tobacco Co., 2 S.E.2d 898, 899 (W.Va. 1939).

With regard to federal prisoners, the BOP owes a duty to provide suitable quarters, and to

7

provide for the inmates' safekeeping, care, and subsistence. 28 U.S.C. § 4042(a). This duty, similar to the duty of a landowner in West Virginia, has been interpreted as one of "reasonable care." See McNeal v. United States, 979 F.Supp. 431 (N.D.W.Va. 1997); Burdette v. Burdette, 127 S.E.2d 249 (1962). "Negligence is the violation of the duty of taking care under the given circumstances. It is not absolute, but is always relative to some circumstances of time, place, manner, or person." Mallet v. Pickens, 206 W.Va. 145, 155, 522 S.E.2d 436, 446 (1999) (citations omitted).

It is not disputed here that the BOP owes a duty of care to federal inmates or that the plaintiff was injured as a result of a fall from his bunk. The question is whether the BOP breached its duty of care in determining the placement of the lockers and whether or not, that breach, if any, was the proximate cause of plaintiffs' injuries. In support of his claim that the defendant breached its duty of care, plaintiff alleges that the secured metal lockers were within 7 to 8 inches of the secured stationary bunk. Plaintiff asserts that this creates an unsafe living environment. Moreover, plaintiff alleges that the placement of the lockers constitutes a "serious design flaw" that causes a safety hazard to all prisoners. Plaintiff provides affidavits from two other inmates, Frank Kalita and Theodore Brown, which verify that the metal lockers are located approximately three feet off the ground and eight inches from the outer edge of the bed. Moreover, upon inspection of plaintiffs' locker soon after his fall, inmates Kalita and Brown discovered a sharp metal edge that protrudes about 1/8 to 1/4 inch from the bottom of the locker. On that metal edge, Inmates Kalita and Brown found dried blood and pieces of skin.

As stated by the defendant in its motion to dismiss, "Plaintiff has not provided any evidence that mounting the locker next to the bunk bed is actionable negligence, willful or wanton misconduct, or a nuisance. Plaintiff merely offers the conclusory statement that placing

8

the locker 7-8 inches away from the bed was negligent." Motion (dckt. 14) at 4. Indeed, it appears that the BOP is between the proverbial rock and a hard place. The BOP has a duty to safeguard its prisoners, but also a duty to provide suitable quarters. By installing the metal lockers, the BOP is fulfilling its obligation to provide suitable quarters.[4] However, as is noticeable in the drawings provided by the plaintiff, and the pictures provided by the defendant, the BOP has limited space and resources in a cell. Given these particular circumstances, the undersigned does not believe that the BOP's placement of the lockers is unreasonable.[5] Accordingly, as there are no genuine issue as to any material fact, and given that plaintiff has failed to make even a *prima facie* showing of negligence, the defendant is entitled to judgment as a matter of law.

Moreover, the undersigned agrees with the defendant that any unsafe condition created by the placement of the lockers next to the bed rails was open and obvious. As recognized by the defendant, an owner or occupant of a premises is not liable for injuries sustained as a result of dangers that are "obvious, reasonably apparent, or as well known to the person injured as they are to the owner or occupant." Burdette, 127 S.E.2d 252 (citations omitted); see also Cazad v. Chesapeake and Ohio Railway Co., 622 F.2d 72, 75 (4th Cir. 1980) ("although a landowner must maintain his property in a reasonably safe condition, he has no duty to warn persons of

---

[4] Due to the nature of the setting, the undersigned doubts that the plaintiff or any other inmate would argue that it is not appropriate for the BOP to provide lockers in which they can secure their personal belongings.

[5] Plaintiff argues that the lockers could be moved and secured over the desk in the cell. While this may be possible, it does not make the BOP's placement of the lockers unreasonable. As it now stands, the lockers are three feet off the ground and unobstructed, making them easily accessible to inmates of all sizes and capabilities. However, moving the lockers over the desks, may limit the accessibility of the lockers to some inmates and/or create other safety hazards, such as an inmate hitting his head on the locker when he stands from the desk.

9

dangerous conditions which are open and obvious"). An invitee "assumes all normal, obvious, or ordinary risks attendant on the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers." Id. The fact that plaintiff arrived at FCI-Gilmer only four days prior to his fall does not change the fact that the placement of the lockers was open and obvious.

Finally, to the extent that the plaintiff argues that the defendant was negligent for failing to install guard rails on the top bunk, the undersigned finds that such a decision fails within the discretionary function exception of the FTCA. Pursuant to 18 U.S.C. § 2680(a), the United States general waiver of sovereign immunity under 28 U.S.C. § 1346(b) does not apply to

> any claims based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

This exception, called the discretionary function exception, "insulates the United States from liability for its agents and employees performance of duties involving discretionary decisions." Williams v. United States, 50 F.3d 299, 308 (4th Cir. 1995). The purpose of the exception is to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 814 (1984).

In order to determine whether or not the discretionary function applies, the Court must first decide whether the conduct at issue involves an element of discretion or judgment of choice. Williams, 50 F.3d at 309. "If a statute or regulation mandates a certain course of action, there is

no element of discretion." Branch v. United States, 2006 WL 1770995 *3 (E.D.Va. June 22, 2006). The statute at issue in this case states that the BOP shall "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." See 18 U.S.C. § 4042(a). This statute merely outlines the general duties of the BOP with regard to its inmates. The BOP is clearly left with an element of discretion or judgment of choice in determining how to fulfill its obligations under this statute.

Thus, because the Court has found an element of discretion, the Court must then determine whether the decision was "based on considerations of public policy." Williams, 50 F.3d at 309. Moreover, it is "the nature of the conduct, rather than the status of its actor, [that] determine[s] the applicability of the exception." Varig Airlines, 467 U.S. at 813. Here, at least one circuit court and one district court have already considered whether the BOP's policy to not install guard rails falls within the ambit of the discretionary function exception. See Bultema v. United States, 359 F.3d 379 (6th Cir. 2004); Paulino-Duarte v. United States, 2003 WL 22533401 (S.D.N.Y. Nov. 7, 2003). In both cases, the Court found that the exception did apply based on the BOP's evidence that there were valid safety and security reasons for not providing the rails.[6] The plaintiff in this case has failed to show any reason why this Court should not find the same.

## VII. Recommendation

For the foregoing reasons,[7] it is the recommendation of the undersigned that the United States' Motion to Dismiss or, in the Alternative, for Summary Judgment (dckt. 14) be

---

[6] Guard rails are not provided because they can be broken off and used as weapons or escape devices.

[7] Because the undersigned has found that the plaintiff cannot establish negligence on the part of the defendant, the undersigned has not addressed the defendant's arguments with regard to contributory negligence and the assumption of the risk at this time.

GRANTED and that the plaintiff's Motion for Nondismissal or Motion for Summary Judgment (dckt. 15) be DENIED and this case be DISMISSED WITH PREJUDICE.

Within ten (10) days after being served with a copy of this opinion/recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation.[8]

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff and any counsel of record.

DATED: August 1, 2006.

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE

---

[8] 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).