IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JAMES HOWARD HARRIS,

    Plaintiff,

v.                                                         Civil Action No. 1:05CV17
                                                                                (STAMP)

UNITED STATES OF AMERICA,

    Defendant.

**MEMORANDUM OPINION AND ORDER
AFFIRMING AND ADOPTING REPORT AND
RECOMMENDATION OF MAGISTRATE JUDGE**

I.   Procedural History

On January 26, 2005, the pro se plaintiff, James Howard Harris, filed a civil rights complaint seeking monetary and injunctive relief against the defendants, Harvey Lappin, K.J. Wendt, Fredrick Grawger and D. Heady. This Court referred the plaintiff's complaint to United States Magistrate Judge John S. Kaull for submission of proposed findings of fact and recommendation pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B). Upon preliminary review, the magistrate judge interpreted the complaint as one raising claims under the Federal Tort Claims Act ("FTCA") and Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971). On May 18, 2005, the magistrate judge entered a report recommending that the plaintiff's FTCA claim should be served upon the individual federal defendants, but that the plaintiff's Bivens claims should be dismissed for the failure to exhaust administrative remedies. On June 6, 2005, this Court affirmed and adopted the magistrate judge's report and

recommendation, thereby dismissing the plaintiff's Bivens claims and directing that the plaintiff's FTCA claim be served upon the individual federal defendants. Service was effected on June 6, 2005. On October 27, 2005, the magistrate judge granted the United States and the individual federal defendants' motion to substitute the United States of America as the defendant pursuant to 28 U.S.C. § 2679(d)(1).

On November 11, 2005, the United States filed a motion to dismiss or, in the alternative, a motion for summary judgment. On November 18, 2005, the plaintiff filed a motion for nondismissal, or in the alterative, a motion for summary judgment. The magistrate judge issued a Roseboro notice to the pro se plaintiff advising him of his right to file a response to the United States's dispositive motion. On June 5, 2006, the plaintiff filed a reply to the Roseboro notice.

On August 1, 2006, the magistrate judge entered a report recommending that the United States's motion to dismiss or, in the alternative, for summary judgment be granted and that the plaintiff's motion for nondismissal or, in the alternative, motion for summary judgment be denied and that this civil action be dismissed with prejudice.

The magistrate judge advised the parties that, pursuant to 28 U.S.C. § 636(b)(1)(C), any party may file written objections to his proposed findings and recommendations within ten days after being

served with a copy of the magistrate judge's recommendation. To date, no objections have been filed.

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court is required to make a de novo review of those portions of the magistrate judge's findings to which objection is made. However, failure to file objections to the magistrate judge's proposed findings and recommendation permits the district court to review the recommendation under the standards that the district court believes are appropriate and, under these circumstances, the parties' right to de novo review is waived. See Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982); Webb v. Califano, 468 F. Supp. 825 (E.D. Cal. 1979). Accordingly, this Court reviews the report and recommendation of the magistrate judge for clear error.

## II. Facts

In his complaint, the plaintiff asserts that he sustained personal injuries in February 2004, when he fell from his bed on the top bunk, hit his head between a metal locker and his bed post and then landed on his prison cell floor. The plaintiff was examined by a physician's assistant at FCI-Gilmer. The examination revealed that the plaintiff suffered a 3 centimeter laceration to his lower lip, jaw pain, a 1.5 centimeter laceration to his chin and a 1 centimeter laceration to his right knee. The plaintiff asserts that this incident caused him permanent scarring, pain in his jaw and lower neck, headaches, lower back pain and leg pain.

The plaintiff contends that the lockers were negligently placed and the Bureau of Prisons ("BOP") has failed to correct this safety hazard in violation of their professional responsibilities. The plaintiff seeks monetary damages in the amount of $35,000.00, re-spacing of the beds and the metal lockers and an inspection of the bunk beds by an independent design engineer.

### III. Applicable Law

A. Motion to Dismiss

The United States filed a motion to dismiss or, in the alternative, for summary judgment. Where, as in this case, a motion to dismiss is accompanied by exhibits, affidavits or any other material to be considered by the Court, the motion shall be construed as a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 12(b); Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004).

B. Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come

4

forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

5

the burden of proof at trial." Celotex, 477 U.S. at 322. In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. Discussion

In its motion to dismiss or, in the alternative, for summary judgment, the United States asserts that the plaintiff has failed to state a claim upon which relief can be granted because the plaintiff has failed to provide any evidence that mounting the locker next to the bunk bed is "actionable negligence, willful or wanton misconduct, or a nuisance." (Def.'s Mot. at 4.) In addition, the United States asserts that the location of the locker in relation to the bunk bed was open and obvious and that the BOP, like other West Virginia landowners, has no duty to warn persons of dangerous conditions which are open and obvious. The United States also argues that the plaintiff's negligence, not the negligence of the BOP, was the proximate cause of the plaintiff's injuries. Finally, the United States asserts that the plaintiff assumed the risk of injury by sleeping with his head at the end of the bed closest to the lockers.

In his motion for nondismissal or, in the alternative, for summary judgment, the plaintiff asserts that the BOP's mounting of the lockers next to the steel rail of his bed is actionable negligence and that the failure of the BOP to move the lockers and

the locker's protruding sharp edge is willful and wanton misconduct. Further, the plaintiff asserts that he had no prior knowledge of the dangerous condition because he had arrived at FCI-Gilmer only four days before the incident. Finally, the plaintiff asserts that he tried to secure a low bunk bed due to his various medical problems, including hypertension, loss of equilibrium and rolling in his sleep, but upon this request the plaintiff asserts that he was told to either take the upper bunk bed or be placed in segregation and possibly receive disciplinary sanctions.

In his report, the magistrate judge found that the plaintiff has failed to make a prima facie showing of negligence. As the magistrate judge noted, it is not disputed that the BOP owes a duty of care to federal inmates or that the plaintiff was injured as a result of a fall from his upper bunk bed. The issue is whether the BOP breached its duty of care in determining the placement of the lockers and whether or not that breach, if any, was the proximate cause of the plaintiff's injuries. Further, the magistrate judge found that any unsafe condition created by the placement of the lockers was open and obvious. Finally, the magistrate judge found that the BOP's decision not to install guardrails on the prisoners's beds falls within the discretionary function exception of the FTCA.

A. Negligence

With respect to federal prisoners, 18 U.S.C. § 4042(a)(2) provides that the BOP owes a duty to provide suitable quarters and

to provide for the inmates' safekeeping, care and subsistence. The duty of the BOP is one of "reasonable care," which is similar to the duty of a landowner in West Virginia. See McNeal v. United States, 979 F. Supp. 431 (N.D. W. Va. 1997). "Negligence is the violation of the duty of taking care under the given circumstances. It is not absolute, but is always relative to some circumstances of time, place, manner or person." Mallet v. Pickens, 522 S.E.2d 436, 446 (W. Va. 1999).

Because all of the alleged negligent acts occurred in West Virginia, the substantive law of West Virginia governs this civil action.

In West Virginia,

> every action for damages resulting from injuries to the plaintiff, alleged to have been inflicted by the negligence of the defendant, it is incumbent upon the plaintiff to establish . . . three propositions: (1) a duty which the defendant owes to him; (2) a negligent breach of that duty; (3) injuries suffered thereby, resulting proximately from the breach of that duty.

Webb v. Brown & Williamson Tobacco Co., 2 S.E.2d 898, 899 (W. Va. 1939) (quoting 2 Jones on Evidence, p. 35, § 184).

The plaintiff asserts that the United States breached its duty of care because the secured metal lockers were within seven to eight inches of the secured stationary bunk bed. The plaintiff contends that the distance between his bed and the metal lockers creates an unsafe living environment. The plaintiff provides affidavits from two other inmates, Frank Kalita ("Kalita") and Theodore Brown ("Brown"), which verify that the metal lockers are

located approximately three feet off the ground and eight inches from the outer edge of the bed. (See Pl.'s Mot. Nondismissal or, in Alternative, Summ. J. Ex. 3 at 4-5.) In their affidavits, Kalita and Brown state that upon inspection of the plaintiff's locker soon after his fall, they discovered a sharp metal edge protruding about one-eighth to one-fourth inch from the bottom of the locker. Id. On that metal edge, Kalita and Brown state that they found dried blood and pieces of skin. Id.

The United States asserts that the plaintiff "has not provided any evidence that mounting the locker next to the bunk bed is actionable negligence, willful or wanton misconduct, or a nuisance." (Def.'s Mot to Dismiss or, in the Alternative, Summ. J. at 4.) The United States further asserts that the plaintiff is merely offering a conclusive statement that placing the locker seven to eight inches away from the bed is actionable negligence.

As stated by the magistrate judge, the BOP has a duty to safeguard its prisoners, but also has a duty to provide suitable quarters. The magistrate judge found that the BOP provides suitable quarters by providing the prisoners with metal lockers.

Upon review by this Court of the plaintiff's drawings and the United States's pictures, the magistrate judge reviewed the drawings provided by the plaintiff and the pictures provided by the United States. The magistrate judge noted that the BOP has limited space and resources in a prison cell. Based upon these circumstances, the magistrate judge found that the BOP's placement

9

of the lockers is reasonable.  This Court agrees with the magistrate judge that the BOP's placement of the lockers is reasonable.  Accordingly, this Court finds that there are no genuine issues as to any material fact and since the plaintiff has failed to make a <u>prima facie</u> showing of negligence, the United States is entitled to judgment as a matter of law.

B.   <u>Open and Obvious</u>

As stated in <u>Burdette v. Burdette</u>, 127 S.E.2d 249, 252 (W. Va. 1962), an owner or occupant of a premise is not liable for injuries sustained as a result of dangers that "are obvious, reasonably apparent, or as well known to the person injured as they are to the owner or occupant" (internal citations omitted).  An invitee "assumes all normal, obvious, or ordinary risks attendant on the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers."  <u>Id.</u>

The magistrate judge found that any unsafe condition created by the placement of the lockers next to the bed rails was open and obvious.  Specifically, the magistrate judge determined that the fact that the plaintiff arrived at FCI-Gilmer only four days prior to the incident does not change the fact that the placement of the lockers was open and obvious.

Accordingly, this Court finds that the placement of the lockers was open and obvious, and thus the BOP is not liable for the plaintiff's injuries asserted in this civil action.

10

C.  <u>Discretionary Function Exception of the Federal Tort Claims Act</u>

Pursuant to 18 U.S.C. § 2680(a), the United States general waiver of sovereign immunity under 28 U.S.C. § 1346(b) does not apply to

> any claims based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

This exception, referred to as the discretionary function exception, "insulates the United States from liability for its agents and employees performance of duties involving discretionary decisions." <u>Williams v. United States</u>, 50 F.3d 299, 308 (4th Cir. 1995). The purpose of the exception is to "prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." <u>United States v. S.A. Empresa De Viacao Aerea Rio Grandense (Varig Airlines)</u>, 467 U.S. 797, 814 (1984).

The magistrate judge found that, to the extent the plaintiff argues that the defendant was negligent for failing to install guardrails on the top bunk, that decision falls within the discretionary function exception of the FTCA. The magistrate judge followed the rule set forth in <u>Williams</u>, 50 F.3d at 299, to determine whether or not the discretionary function applies by

11

first deciding whether the conduct at issue involved an element of discretion or judgement of choice. "If a statute or regulation mandates a certain course of action, there is no element of discretion." Branch v. United States, 2006 WL 1770995, at *3 (E.D. Va. June 22, 2006)(slip opinion). The statute at issue in this civil action, 18 U.S.C. § 4042(a), states that the BOP shall "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." The magistrate judge determined that this statute merely outlines the general duties of the BOP with regard to its inmates and the BOP is clearly left with an element of discretion or judgment of choice in determining how to fulfill its obligations under this statute.

Since the magistrate judge found that the BOP was left with an element of discretion, the magistrate judge then had to determine whether the BOP's decision was "based on considerations of public policy." Williams, 50 F.3d at 309. As stated in Varig Airline, 467 U.S. at 813, it is "the nature of the conduct, rather than the status of its actor, [that] determine[s] the applicability of the exception.

At least one circuit court and one district court have already considered whether the BOP's policy to not install guardrails falls within the ambit of the discretionary function exception. See Bultema v. United States, 359 F.3d 379 (6th Cir. 2004); Paulino-Duarte v. United States, 2003 WL 22533401 (S.D.N.Y. Nov 7, 2003).

In both of these cases, the courts found that the exception did apply based on the BOP's evidence that there were valid safety and security reasons for not providing the guardrails. Specifically, the courts found that the guardrails were not provided because they could be broken off and used as either a weapon or as an escape device.

This Court finds that the discretionary function exception applies and that valid safety and security reasons exist for the BOP's decision to refuse to install guardrails. In addition, this Court finds that the plaintiff has failed to provide any reason why this Court should come to a different conclusion.

For the reasons stated above, this Court finds that the United States's motion to dismiss or, in the alternative, for summary judgment must be granted and that the plaintiff's motion for nondismissal or, in the alternative, motion for summary judgment must be denied.

V. Conclusion

Because the parties have not objected to the report and recommendation of the magistrate judge, and because this Court finds that the magistrate judge's recommendation is not clearly erroneous, the ruling of the magistrate judge is hereby AFFIRMED and ADOPTED in its entirety. Accordingly, the United States's motion to dismiss or, in the alternative, for summary judgment is hereby GRANTED and the plaintiff's motion for nondismissal or, in the alternative, motion for summary judgment is hereby DENIED. It

is further ORDERED that this civil action be DISMISSED WITH PREJUDICE and STRICKEN from the active docket of this Court.

Moreover, under Wright v. Collins, 766 F.2d 841, 845 (4th Cir. 1985), the petitioner's failure to object to the magistrate judge's proposed findings and recommendation bars the petitioner from appealing the judgment of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to the pro se plaintiff, James Howard Harris, and counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED: September 6, 2006

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE